UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                :
ANTHONY WALKER,                                 :
                                                :
                        Plaintiff,              :
                                                :
        -v-                                     :        **OPINION AND ORDER**
                                                :        11 Civ. 9034 (ER)
CAPTAIN VARGAS;                                 :
CORRECTION OFFICER ALSTON;                      :
JANE DOE #1 CORRECTION OFFICER                  :
OF GMDC/C-73,                                   :
                                                :
                        Defendants.             :
                                                :
------------------------------------------------------X

EDGARDO RAMOS, United States District Judge:

  Plaintiff Anthony Walker ("Walker" or "the Plaintiff"), proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Captain Vargas ("Vargas"), Correction Officer Alston ("Alston"), and an unidentified correction officer ("Jane Doe #1"). The Plaintiff alleges that he was injured after the Defendants instructed him to work under conditions they knew to be unsafe. Vargas and Alston (collectively, "the Defendants[1]") have moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 19. The motion is denied.

## BACKGROUND

  The Court accepts the following allegations as true for purposes of this motion.[2] On January 17, 2009, the Plaintiff was a pretrial detainee in George Motchan Detention Center on

---

[1] Because the Jane Doe Defendant has not been identified or served, she does not join in this motion. For simplicity, this opinion and order refers to Captain Vargas and Correction Officer Alston as "the Defendants."

[2] Some of these allegations appear in filings other than the amended complaint; specifically, this opinion relies on allegations in the original complaint and the Plaintiff's opposition to the motion to dismiss. "[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the

1

Rikers Island. Am. Compl. 2, Doc. 5. The Plaintiff was assigned to work in the kitchen. *See id.* The drains in the kitchen were clogged, flooding the floor with food waste and causing the floor to be extremely slippery. *Id.* at 3. Correction and kitchen staff members had submitted work orders over the previous week requesting that prison staff repair the drains. *Id.*

The Plaintiff told Correction Officer Alston ("Alston"), who was the immediate supervisor of the prisoner staff members, and Captain Vargas ("Vargas") about the dangerous conditions in the kitchen. *Id.* at 3, 5. Although Alston and Vargas were both fully aware of the flooding, they ordered the Plaintiff and other prisoners to continue working in the kitchen. *Id.* at 5. The Plaintiff slipped and suffered first and second degree burns to his left foot; in the original complaint, the Plaintiff specified that he slipped into an open hot water drain, scalding his foot. *Id.* at 3; Compl. 3, 10, Doc. 2. The Plaintiff further alleges that he was burned so badly that he required "supportive boots" and daily bandage changes. Am. Compl. 3; Compl. 10. For three weeks after his injury, he relied on a cane. *Id.*

Approximately nine months after the accident, on September 20, 2010, the Plaintiff commenced a *pro se* action against the City of New York and the Department of Correction in the Eastern District of New York. *Walker v. City of New York*, No. 10 Civ. 4323 (BMC) (LB) (E.D.N.Y. Sept. 27, 2010) [hereinafter *Walker I*]. In *Walker I*, the Plaintiff alleged that on January 17, 2009, he was injured in "a slip and fall incident, due to the negligence of the facility's plumbing staff." Compl. 4, *Walker I*, Doc. 1. His allegations regarding his injuries were the same as his allegations in this case. *Id.* Less than two weeks later, the complaint was dismissed for failure to state a claim. *Walker I*, slip op. at 3.

---

complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quotation marks omitted) (collecting district court cases); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).

On December 5, 2011, the Plaintiff filed the instant action against the City of New York, the Department of Correction, and "the John and Jane Does of the plumbing, kitchen, and correctional staff of the George Motchan Detention Center." Compl. 1. Following Chief Judge Preska's order directing the Plaintiff to amend the complaint, Doc. 4, he filed an amended complaint on February 8, 2012, against Vargas, Alston, "Mr. Reed, supervisor of civilian kitchen staff," two John Doe Defendants, and "the plumbing staff of the George Motchan Detention Center." Am. Compl. 1. The amended complaint alleges that Reed, other supervisors of the plumbing staff, and the plumbing staff themselves negligently allowed the kitchen to remain flooded for a week. *Id.* at 3. The amended complaint also alleges that Vargas and Alston knew the kitchen was flooded, but the Plaintiff was ordered the Plaintiff to continue working in the kitchen. *Id.* at 5.

After this case was transferred to the undersigned, the Court issued an order dismissing the Plaintiff's claims against each of the civilian defendants for failure to state a claim. May 3, 2012 Order 3, Doc. 10. That order also directed New York City Corporation Counsel to assist the Plaintiff with identifying the remaining Jane Doe Defendant. *Id.* at 3-4.

Despite Corporation Counsel's efforts (*see* Defs.' Sept. 13, 2012 and Oct. 11, 2012 Letters, Docs. 16 & 18), counsel was unable to identify the Jane Doe Defendant before October 15, 2012. The Defendants filed a motion to dismiss the amended complaint on November 21, 2012, arguing that (1) the complaint is barred by the doctrine of collateral estoppel; (2) the Plaintiff failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"); and (3) the Plaintiff has failed to state a claim under § 1983. Doc. 19. The Court rejected Plaintiff's request to file a proposed second amended complaint on January 4, 2013, and directed him to respond to the motion to dismiss. Memo Endorsement, Doc. 22. The

3

Plaintiff filed an opposition to the Defendants' motion on February 6, 2013, and the Defendants replied on March 7, 2013. Docs. 23, 24.

## DISCUSSION

### I. Standard of Review

A court deciding a motion under Rule 12(b)(6) must "accept all factual allegations in the complaint as true and draw all reasonable inferences" in the plaintiff's favor. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In cases brought by a *pro se* plaintiff, courts are further constrained to construe the complaint to raise the strongest claims it suggests. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010)). The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims. *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002). A complaint must do more, however, than offer "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Indeed, even in *pro se* cases, "threadbare recitals of elements of a cause of action" fail to adequately state a claim. *Parris v. N.Y. State Dep't Correctional Svcs.*, No. 12 Civ. 1849 (JGK), 2013 WL 2257096, at *3 (S.D.N.Y. May 23, 2013) (citing *Chavis*, 618 F.3d at 170); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.  Issue Preclusion[3]

After a Court decides an issue of fact or law in a given case, the parties to that case cannot dispute the issue in a new lawsuit. *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 284 (2d Cir. 2012) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir 2002)). This is a legal doctrine known as "issue preclusion;" the parties are precluded from raising the same issue in a later case. *Id.* (citing *Marvel Characters, Inc.*, 310 F.3d at 288). This doctrine is meant to "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (alterations and quotation marks omitted) (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

The Defendants argue that this action is barred by the doctrine issue preclusion because it presents the same issue decided in *Walker I*. Federal common law governs the preclusive effect of a decision in a case arising under a court's federal question jurisdiction. *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012) (citing *Taylor*, 553 U.S. at 891-92). *Walker I* presented a federal question under 42 U.S.C. § 1983, and therefore, federal common law determines the case's preclusive effect. Under federal common law, issue preclusion applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[y] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* at 141 (quoting *Marvel Characters, Inc.*, 310 F.3d at 288-89).

---

[3] The Defendants use the term "collateral estoppel" in their motion. The terms "collateral estoppel" and "issue preclusion" are interchangeable. This opinion uses the term "issue preclusion."

The Court need not go beyond part one of this test to hold that issue preclusion does not apply to any of the Plaintiff's allegations concerning Alston and Vargas. In *Walker I*, the Plaintiff alleged that the jail's kitchen floor was flooded for over a week due to the negligence of the plumbing staff. The Court held that these allegations failed to state a claim under § 1983.[4] In this case, the Plaintiff alleges that Alston and Vargas forced him to work in the kitchen despite their knowledge of unsafe working conditions. The Plaintiff did not raise these allegations in *Walker I*. Thus, there is no previous decision about any issue of law or fact with respect to Alston and Vargas's conduct.

The Defendants argue that the issue in this case is whether the Plaintiff was injured "due to the alleged negligence of Department of Correction employees," which is "virtually identical" to the issue decided in *Walker I*. Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") 5, Doc. 20. The question, however, is not whether the issues are "virtually" identical, but whether the issues are actually identical. *Marvel Characters, Inc.*, 310 F.3d at 288-89 (reciting the first element of issue preclusion: "the identical issue was raised in a previous proceeding") (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)). There are two clear distinctions between the issue decided in *Walker I* and the issue in this case. In this case, the Plaintiff alleges that the Defendants deliberately disregarded a known risk to the Plaintiff's safety. Am. Compl. 3, 5. This is not an allegation that the Defendants acted with negligence, despite the Plaintiff's use of that term. Deliberate conduct is not negligent conduct. *Daniels v. Williams*, 474 U.S. 327, 331-32 (1986) (holding that negligence does not violate the Due Process Clause because it is not a

---

[4] Specifically, Judge Cogan held that the Plaintiff failed to state a claim against the City of New York because the Plaintiff did not make any allegations concerning a City custom, practice, or policy. Compl. 14 (*Walker I*, slip op. at 2). Judge Cogan also dismissed the Plaintiff's claims against the Department of Correction because it is not an entity that can be sued. *Id.* at 15 (*Walker I*, slip op. at 3).

deliberate abuse of power). The deliberate conduct alleged in this case is not identical to the issue presented in *Walker I*, which was the negligence of the plumbing staff.

Second, and more obviously, the allegations in *Walker I* had nothing to do with Alston or Vargas. The Defendants argue that the issue in *Walker I* was whether any "Department of Correction employees" were liable to the Plaintiff. Defs.' Mem. 5. The *Walker I* complaint contains no basis for this generalization. The allegations in that complaint were about "the facility's plumbing staff" and no one else. Compl. 4, *Walker I*.

The amended complaint puts the constitutionality of Alston and Vargas's alleged conduct at issue. Because this issue was not raised or decided in the prior case, the Plaintiff is not precluded from litigating the issue in this action. The motion to dismiss the complaint on the ground of issue preclusion is denied.

### III. Exhaustion Under the Prison Litigation Reform Act ("PLRA")

"[F]ailure to exhaust is an affirmative defense in a lawsuit governed by the PLRA." *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (*per curiam*) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Like other affirmative defenses, failure to exhaust may be grounds for dismissal under Rule 12(b)(6) if the defense appears on the face of the complaint. *See Jones*, 549 U.S. at 215 (discussing the PLRA exhaustion requirement: "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground . . . .").

A. *The Complaint Establishes that the Plaintiff Did Not Properly Exhaust Administrative Remedies*

The PLRA requires a prisoner to exhaust all available administrative remedies before he can bring an action under federal law with respect to prison conditions. *See* 42 U.S.C.

§ 1997e(a) (codification of exhaustion requirement); *Woodford v. Ngo*, 548 U.S. 81, 93-103 (2006). "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "Section 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 305 (quoting *Woodford*, 548 U.S. at 90). It is not enough that prison officials are already on notice of the issue that the prisoner would have grieved. *Macias v. Zenk*, 495 F.3d 37, 43-44 (2d Cir. 2007). Notice alone is insufficient; prisoners must comply with a grievance system's procedural rules in order to exhaust a claim under the PLRA. *Id.*

The Department of Correction's Inmate Grievance Resolution Program was set forth in Department Directive 3375R-A (2008), *available at* http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf (last visited August 26, 2013).[5] The grievance program permits prisoners in the Department's custody to file grievances "about the substance or application of any written or unwritten policy, regulation, rule or procedure of the DOC or any of it's [sic] units, or the lack of a policy, regulation, rule or procedure, based on the impact of such policy or lack thereof on the inmate personally." Directive 3375R-A § III(A).

The Plaintiff's claim arose while he was in the Department's custody at George Motchan Detention Center. The claim related to implementation of Departmental policies, or perhaps the lack of any specific policies, regarding prisoners' working conditions. Accordingly, the Plaintiff was entitled to seek formal review of his claim through the grievance program. The Plaintiff

---

[5] This is the grievance program that was in place at the time of the Plaintiff's injury. The program has since been replaced by the Inmate Grievance and Request Program in DOC Directive 3376 (2012), *available at* http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Program.pdf (last visited August 26, 2013).

8

explains that he did not file a grievance because "kitchen and correctional staff provided numerous work orders to remedy the hazardous conditions mentioned." Am. Compl. 4. The Plaintiff's intuition that he did not need to file a grievance is understandable. He assumed, reasonably, that filing yet another complaint about the flooding in the kitchen would not do him any good. Nevertheless, the Plaintiff's own allegations establish that he did not use the grievance program, and thus he did not "exhaust" his claim for purposes of the PLRA.

B.  *The Complaint Leaves Open the Possibility that the Court Should Excuse the Plaintiff's Failure to Exhaust*

If a prisoner plaintiff has not complied with the PLRA's exhaustion requirement, the district court must apply a three-part test to determine whether to excuse the plaintiff's failure to exhaust. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) (citing *Hemphill v. New York*, 380 F.3d 680, 685-86 (2d Cir. 2004)). The court must (1) determine whether administrative remedies were in fact available to the plaintiff; (2) consider whether the defendants are estopped from raising nonexhaustion because they failed to preserve the defense or inhibited the plaintiff's exhaustion; and (3) consider whether other special circumstances excuse the plaintiff's nonexhaustion. *Id.* (citing *Hemphill*, 380 F.3d at 686-91).[6]

---

[6] Two years after the *Hemphill* test was established in 2004, the Supreme Court decided *Woodford v. Ngo*, which potentially calls part of the *Hemphill* test into question. In *Woodford*, the Court held that a prisoner may not satisfy the PLRA's exhaustion requirement by filing a procedurally defective grievance or appeal; rather, the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." 548 U.S. at 90. This decision may abrogate the doctrines of estoppel and special circumstances, parts (2) and (3) of the *Hemphill* test. *See Amador*, 655 F.3d at 102 (noting, without deciding, the potential conflict). *But see Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) (quoting *Hemphill* test without reference to any potential conflict). There is no question that part (1) of the *Hemphill* test, which inquires into the actual availability of administrative remedies, was untouched by *Woodford*. *Johnston v. Maha*, 460 Fed. App'x 11, 14 n.6 (2d Cir. 2012) (calling an argument to the contrary "meritless: Although [*Woodford*] requires that prisoners 'properly' exhaust the available remedies under the PLRA, it certainly does not abrogate the unavailability defense to nonexhaustion."). Because the Court can dispose of the exhaustion question under part (1) of the *Hemphill* test, this opinion need not address whether parts (2) and (3) were affected by the decision in *Woodford*.

An administrative remedy is not "available" for purposes of the PLRA if prisoners are not fully informed about the existence and operation of the remedy. *Bush v. Horn*, No. 07 Civ. 3231 (RJS) (FM), 2010 WL 1712024, at *3-*4 (S.D.N.Y. Mar. 2, 2010) (refusing to dismiss on exhaustion grounds because plaintiff did not receive a prisoner manual explaining grievance procedures; treating this as a "special circumstance"); *cf. Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (suggesting that exhaustion requirement would be excused if a prisoner did not receive a prisoner handbook and "he was unaware of the grievance procedures contained within it or [] he did not understand those procedures"). The Plaintiff's allegations do not conclusively establish that he was aware of the grievance program or that he understood the procedure for filing a grievance. In fact, the amended complaint implies that the only matter the Plaintiff could have grieved was the flooding in the kitchen—it is unclear whether the Plaintiff was aware that he could file a grievance about being forced to work in the flooded kitchen. Furthermore, in his opposition to the Defendants' motion to dismiss, the Plaintiff alleges that he was not aware of any administrative remedies. Pl.'s Rebuttal ¶ 2, Doc. 23. In light of the possibility that the Plaintiff was not fully informed about the grievance program, the Plaintiff's allegations do not foreclose the possibility that the Court should excuse the Plaintiff's failure to exhaust.

The Defendants argue that the Plaintiff's alleged ignorance of the grievance program "strains credulity" and that the Plaintiff "conceded . . . that the facility where he was housed has a grievance procedure," referring to a blank the Plaintiff checked next to the word "yes" in response to a form question about the existence of a grievance procedure. Defs.' Reply Mem., Doc. 24. The Second Circuit has repeatedly warned district courts that a *pro se* plaintiff's checkmarks on a form complaint are not sufficient to establish the availability of an

administrative remedy. *Mojias v. Johnson*, 351 F.3d 606, 609-10 (2d Cir. 2003) (citing *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999)). More broadly, the Defendants' argument that the Court should doubt the Plaintiff's allegations seems to overlook the fact that failure to exhaust is an affirmative defense. The Court is obligated to accept the Plaintiff's allegations as true; the Defendants bear the burden of showing that these allegations conclusively establish that the amended complaint should be dismissed for failure to exhaust. If the Defendants wish to challenge the Plaintiff's allegation that he was unaware of the grievance procedure, they must do so in a motion for summary judgment. Dismissal for nonexhaustion is not proper at this stage. *Patterson v. City of New York*, No. 11 Civ. 7976 (DLC), 2012 WL 3264354, at *1, *3 (S.D.N.Y. Aug. 9, 2012) (declining to dismiss for nonexhaustion where plaintiff alleged that he had "done all that can [sic] with the grievance process"); *Roland v. Wenz*, No. 10 Civ. 0089 (GLS) (DEP), 2010 WL 2834828, *4-*5 (N.D.N.Y. May 24, 2010) (refusing to dismiss for nonexhaustion where plaintiff asserted, incorrectly, that his prison did not have a grievance process) (quoting *Torrence v. Pesanti*, 239 F. Supp. 2d 230, 231-33 (D. Conn. 2003) (holding that "[w]hen the failure to exhaust administrative remedies under the PLRA is suggested, but not unambiguously established, by way of a motion to dismiss, the court can and should convert the motion to dismiss into a motion for summary judgment and order further briefing and/or evidence.")). *But see Howard v. Deuel*, No. 10 Civ. 6228 (CJS), 2011 WL 4829689, at *4 (W.D.N.Y. Oct. 12, 2011) (granting motion to dismiss for nonexhaustion because the plaintiff failed to present "evidence that the [defendants] took any action to inhibit Plaintiff's exhaustion of remedies"). Thus, the motion to dismiss the complaint on exhaustion grounds is denied.

IV.     **Failure to State a Claim Under Section 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *accord McKithen v. Brown*, 481 F.3d 89, 99 (2d Cir. 2007). In addition, if the plaintiff seeks money damages, he must allege that the defendant was personally involved in the alleged constitutional violation. *Costello v. City of Burlington*, 632 F.3d 41, 48–49 (2d Cir. 2011) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

Under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee has a liberty interest in avoiding conditions of pretrial detention that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Pretrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (quoting *Benjamin v. Fraser*, 343 F.3d 35, 49-50 (2d Cir. 2003)), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. at 662. A detainee's rights are therefore "at least as great" as those of a convicted prisoner. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

A prison official's failure to act is cruel and unusual punishment if the failure to act meets two conditions. First, the resulting punishment must be objectively serious; the prison official must impose "conditions posing a substantial risk of serious harm" to the prisoner. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Second, the prison official must be subjectively culpable by acting with "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)).

A prison official acts with deliberate indifference when she orders a prisoner to work in conditions that she knows to be unsafe. *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987). An order directing a prisoner to work in hazardous conditions "involve[s] more than ordinary lack of due care for the prisoner's interests or safety;" therefore, if the order results in an objectively serious risk to the prisoner's well-being, it violates the Eighth Amendment. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (holding allegations that prison official ordered prisoner to climb a ladder the official knew to be unsafe stated Eighth Amendment claim); *Baumann v. Walsh*, 36 F. Supp. 2d 508, 513–15 (N.D.N.Y. 1999) (denying summary judgment in light of evidence that prison official ordered prisoner to climb on boxes and shelves in an unsafe manner); *see also Morgan v. Morgensen*, 465 F.3d 1041, 1047 (9th Cir. 2006) (affirming denial of summary judgment in light of evidence that prison official ordered prisoner to use machinery that the official knew to be defective). Because pretrial detainees may not be punished in any way, prison officials are likewise forbidden from issuing such orders to detainees.

Here, the Plaintiff alleges that the flooding in the kitchen put him at risk of suffering a serious injury; in fact, he claims that he actually suffered a serious burn to his foot that required weeks of treatment. These allegations are sufficient to state a claim that the conditions in the kitchen posed a substantial risk of serious harm to the Plaintiff. The Plaintiff also alleges that he specifically told both of the Defendants that the flooding was an "unsafe condition[]," but the Defendants told him to "keep working until the problem could be fixed by the plumbing staff." Am. Compl. 5. This instruction arguably evinces deliberate indifference to risks that working in a flooded kitchen posed to the Plaintiff's safety.

The Defendants make many arguments that the Plaintiff has not alleged a constitutional violation. Their arguments overlook central portions of a short, straightforward pleading. First,

the Defendants argue that the Plaintiff's use of the word "deliberate" is a mere "label[]," citing to *Iqbal*'s description of the plausibility standard. Defs.' Mem. 9. As discussed above, the amended complaint alleges that the Defendants told the Plaintiff to "keep working until the problem could be fixed by the plumbing staff." Am. Compl. 5. This allegation, if true, asserts an affirmative direction by the Defendants to the Plaintiff and shows that the Defendants acted with knowledge of the flooding in the kitchen; it is enough to elevate the Plaintiff's allegation that the Defendants acted "deliberate[ly]" beyond a mere label to a plausible claim.

Second, the Defendants latch on to the *pro se* Plaintiff's use of the word "negligence" and argue that the Plaintiff has stated "nothing more than a State law negligence action." Defs.' Mem. 9. The Defendants cite to three opinions in support of this argument, each of which concludes that there was no a constitutional violation when a prisoner fell on a slippery floor: *Martin v. City of New York*, No. 11 Civ. 0600 (PKC) (RLE), 2012 WL 1392648, *9 (S.D.N.Y. Apr. 20, 2012) (dicta); *Edwards v. City of New York*, No. 08 Civ. 5787 (PGG), 2009 WL 2596595, *2-*3 (S.D.N.Y. Aug. 24, 2009); and *Jennings v. Horn*, No. 05 Civ. 9435 (SAS), 2007 WL 2265574, *5 (S.D.N.Y. Aug. 7, 2007). However, none of these cases involved a prison official ordering a Plaintiff to perform work in a flooded area. As the cases cited above show, ordering a prisoner to work under known dangerous conditions raises an official's culpability above the realm of negligence and into the realm of deliberate indifference. The Plaintiff alleges that the Defendants gave him such an order.

Third, the Defendants argue that they were not personally involved in any potential constitutional violation because they did not cause the flooding in the kitchen. Defs.' Mem. 9-10. Like other arguments in the Defendants' motion, this argument ignores the Plaintiff's

allegation that Alston and Vargas personally instructed the Plaintiff to work in the flooded kitchen.

Fourth, the Defendants argue that the flooding in the kitchen did not "expose[] Plaintiff to a risk of sufficiently serious harm." Defs.' Mem. 10. Taking the Plaintiff's allegations as true, the kitchen floor was extremely slippery. There was a risk that the Plaintiff would be injured if he slipped and fell. That risk materialized and the Plaintiff suffered first degree burns. First degree burns are a serious injury. Such burns are sufficiently serious to satisfy the objective prong of a cruel and unusual punishment analysis, and therefore, these burns are certainly serious enough to constitute punishment for purposes of the Due Process Clause. *See, e.g., Paradis v. Blair*, 07 Civ. 0094, 2007 WL 3223222, at *2 (D. Vt. Oct. 29, 2007) (holding that a convicted prisoner who suffered first degree burns stated an Eighth Amendment claim, in part because "it simply cannot be said as a matter of law that . . . the harm is insufficiently serious"); *see also City of Revere*, 463 U.S. at 244 (holding detainees' rights are "at least as great" as those of a convicted prisoner); *Iqbal v. Hasty*, 490 F.3d at 168 (citing *Benjamin*, 343 F.3d at 50) (holding pretrial detainees "may not be punished in any manner—neither cruelly and unusually nor otherwise").

Fifth and finally, the Defendants argue that, while the amended complaint alleges that they knew of the flooding, the amended complaint does not allege that they "knew that this put Plaintiff at risk of serious damage to his future health." Defs.' Mem. 11. This argument would not succeed even if the Plaintiff were represented by counsel. The Court is bound to draw all reasonable inferences in the Plaintiff's favor. *Hayden v. Paterson*, 594 F.3d at 160. It is reasonable to infer that the Defendants knew that the flooding in the kitchen might cause the Plaintiff to slip and fall.

15

The Plaintiff has alleged facts satisfying both the subjective and objective elements of an Eighth Amendment claim; for that reason, he has also stated a claim that he was punished in violation of the Due Process Clause of the Fourteenth Amendment. The Defendants' motion to dismiss the complaint for failure to state a claim under § 1983 is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the complaint is denied. The Clerk is respectfully directed to terminate the motion. Doc. 19.

SO ORDERED:

Dated: August 26, 2013
      New York, New York

                                                EDGARDO RAMOS
                                          United States District Judge